May it please the court, Christopher Prince for the petitioner, Mr. Howe. Asylum applicants are amongst the most vulnerable of clients. They often lack basic English skills and any sophistication or knowledge of the American legal system. While there are many fine and honorable practitioners of immigration law, sadly, the vulnerable nature of the client base often attracts attorneys who are not performing in the highest respects of their profession. Mr. Burrier, who represented Mr. Howe in his removal proceedings, is one of those persons. He affiliated himself with a company called the Asian Pacific Legal Center. Using that name, it appears to project an air of officialness or almost like a pro bono nonprofit of similar names, when in fact it was really basically a scam. He was investigated by the state of California for his conduct, even though he was not licensed here, and was investigated where he was licensed, in Connecticut, and ultimately was suspended for his performance, not just generally, but specifically in this case. There was a finding on a preponderance of evidence that his representation was inadequate. Looking at the specifics of the record, it's undeniable that Mr. Burrier did not adequately represent his client. He only met with him twice for the entirety of the case. The sum total of his meeting was for less than an hour. He did not prepare or present adequate evidence, did not provide corroborating evidence of even the most basic nature. For example, most importantly, the scar on Mr. Howe's leg, which would have corroborated his story that he was burned by a cigarette. Did the immigration judge indicate that he did not believe that the petitioner's leg was burned with a cigarette? The immigration judge indicated to Mr. Burrier that he had no way to corroborate that story. Which story, that he was burned, or that he had a burn on his leg? That he had a burn on his leg, and he admonished Mr. Burrier during the proceedings. I'm sorry, I believe it was she, actually, admonished Mr. Burrier during the proceedings that the proper way to introduce evidence would have been to have photographs and a doctor's note. And Mr. Burrier had previously in the proceedings essentially waived the opportunity to present any photographs or doctor's note. Well, the photograph would have merely shown a burn on the leg, but not how it occurred or who did it to him. Isn't that true? A photograph would merely show the burn, but a properly documented statement from a doctor could have corroborated, for example, that it was a cigarette burn, which would be unlikely to have occurred in any situation but something like torture. Unless one is prone to burning oneself with cigarettes on, it would have to be another person who had done it under duress. So had Mr. Burrier presented evidence that Mr. Howe had a cigarette burn on his leg, it would have been very strong corroborating evidence of his story that he was detained by Chinese authorities and tortured. Could a doctor have determined that a burn on someone's leg was caused by a cigarette? Being a lawyer and not a doctor, I can't say for certain. But just as a layperson, I would say that a cigarette burn would have certain characteristics, unlike, say, a burn from, I don't know, a cooking accident or something, that in the nature of a cigarette butt burn would be different. Or at least under the standard that should be applied here, because there was even no attempt to do any of these things, the point is that the assistance was ineffective. Counsel, the problem that you face is, and you were very articulate in your opening comments on the vulnerability of clients who don't speak English or are not familiar with our system, but the problem is that the errors that Burrier made would have been apparent even at the time. These were not concealed. These were not fraudulent errors. They were errors that should have been apparent to everybody in the courtroom, including your client, even though he's not familiar, maybe he's not watching U.S. television and isn't watching all of the courtroom drama shows. He doesn't know exactly what he's got to do. But what you're asking us for is for an open-ended equitable tolling rule, one that would say, because my client didn't know the system, even though it was apparent to everybody in the courtroom that Burrier was incompetent, I should have unlimited equitable tolling until such time as he gets competent counsel. Isn't that the rule that you're asking for? Well, I'm asking for a very specific rule that would apply to this case rather than any kind of open-ended rule. But I believe that under the relevant authorities, Mr. Howe, despite his lack of knowledge, showed remarkable diligence. He went back to the Asian Pacific Legal Center and told them what had happened, and they suggested he file an appeal. Now the BIA, the Board of Immigration Appeals, actually used that against Mr. Howe, suggesting that going back to the same fraudulent organization that had referred him to Mr. Burrier in the first place somehow showed that he was unnoticed and should have brought the motion to reopen at the time. I think that was a basic error. I suspect if you look at the BIA's decision, it's of such a cursory and dismissive nature that they didn't even understand what they were ruling about. They, I think, misunderstood and thought that this was a legitimate nonprofit organization, that he had gone to something like an actual nonprofit specializing in immigration and was told to appeal instead of the sort of front operation. I appreciate all that. You haven't still addressed my concern, which is you appear to be asking for an open-ended, equitable tolling until such time as Mr. Howe obtains what you deem to be competent counsel. I think under the circumstances it wouldn't be necessary to have such a rule. Mr. Howe demonstrated active diligence during this period. He did not simply sit back. But the BIA's rules allow for 90 days. You have three months to go out and find somebody if you're unhappy with this. Somebody walks out of the hearing and says, you've got a turkey for a lawyer. You need to go find somebody else. You've got 90 days to solve that problem. Again, there's nothing fraudulent. There's nothing hidden here. It's all open and notorious to anybody who's in that hearing. I think that would be an unfair burden to place on. So is the rule unconstitutional? What's the rule of decision that we get around a 90-day waiting period? We have all kinds of waiting periods or time limits in our system. That's not unique to the BIA. So what is it that gets you around the 90-day period? Well, there's a long-standing doctrine in this circuit. Numerous cases cited in the reply that when the client is showing diligence, meaning not sitting on his or her rights and attempting to pursue appropriate remedies, that equitable tolling is appropriate. And I think Mr. Howe was exceptionally diligent. And you're asking for an equitable tolling period of four years? I don't know the exact date off the top of my head. But essentially the time period is not important so long as the applicant is showing the kind of diligence that Mr. Howe was showing. He went so far as to file an appeal pro se and was referred by this court to pro bono counsel. Mr. Howe at every step did everything that was reasonably within his power to pursue appropriate remedies and to expect a non-English-speaking non-citizen to understand the details of motions to reopen in the 90-day period. It is not reasonable and not just. If the applicant is attempting to seek competent counsel and is not getting it from and is not being protected by the system, Mr. Burrier was under investigation and candidly should not have been practicing law at all at the time that he was. You're down to a minute, but I would like you to address and hope that the presiding judge will offer you just a little bit of time and rebuttal because I've consumed a lot of your time. But I would like you to tell us, what is it that would have changed the result in Mr. Howe's case? The cigarette burn? What else? Anything else? The cigarette burn, the clear difficulty that Mr. Howe was having with the translation. I think if you read the transcript, it's obvious that the immigration judge had serious questions about Mr. Howe's credibility and Mr. Howe's inability to understand the questions and be adequately prepared. There's also lack of authentication of documents. There's a lengthy colloquy about documents being faxed and where they came from. Most of the problems there are problems that come out of Mr. Howe's own testimony, not from anything his lawyer did. Because the attorney had not prepared Mr. Howe and made no effort to offer corroborating evidence of any kind and there were translation errors, it's not surprising that there would be an adverse credibility finding when you have a story that is completely uncorroborated and confused. Well, it is confused because he testifies that these documents get faxed by two or three different parties and it makes a difference as to who. I mean, the story just doesn't add up. He's got somebody different obtaining these documents every time he talks. Well, as I read it, I didn't read it that way. I read it that Mr. Howe obtains documents from his work unit and the questioning was confusing about who's faxing to whom and at what time is it being received. I didn't read the testimony as being at all unclear that the documents are from the work unit. There was just a lengthy and candidly very hostile questioning by the judge rather than the opposing counsel. And I realize that I've gone over time and I would ask the Court's indulgence for some period on rebuttal if that's appropriate. Thank you, Mr. Price. Ms. Morgan. Good morning, Your Honors. May it please the Court, I'm Carmel Morgan, appearing on behalf of the Respondent, the U.S. Attorney General. The Board did not abuse its discretion in denying the Petitioner's motion to reopen where it correctly determined that the Petitioner failed to plausibly establish that the outcome of the proceedings may have been affected by his prior counsel's alleged misconduct. The Petitioner is basically arguing three different areas where Mr. Burrier performed deficiently. First, he alleges that Mr. Burrier failed to present physical evidence of a scar. Second, he failed to adequately prepare him to testify. And third, he failed to attend to purported translation problems. Well, the IJ did not accept the testimony about the scar, absent cooperation, right? It appears that way. The record is, I admit, somewhat confusing, but it appears that the immigration judge wanted some form of documentation and didn't receive it. Then why wouldn't that satisfy the prejudice form? Well, for some of the reasons that were brought up by the Court before, it would have been helpful if Mr. Howe, at this stage of the motion to reopen, had submitted the evidence from a doctor that he purports would have made a difference in the outcome of his case, but he failed to do so here. So it's a little difficult to determine. And I'm not sure that a doctor would know that a burn on Mr. Howe's leg was caused by a cigarette. The doctor certainly couldn't speak to whether or not that occurred at a specific time and for a specific reason. We sort of don't know any of that. I think what we know from the record is that it was important to the IJ and might have made a difference. I don't think that the record shows that that was important to the immigration judge or would have made a difference. He said it. He said he needed cooperation. Otherwise, he wasn't going to credit it. That's correct. But the overall finding was that Mr. Howe was not credible because of inconsistencies in his own testimony that were entirely independent of Mr. Burrier's conduct either prior or during the proceedings itself. The main area of inconsistency that was of concern even to this court was the fact that Mr. Howe gave very different answers to the number of times that he was required to report to the police station following his alleged release from detention. That inconsistency doesn't involve Mr. Burrier at all. That was Mr. Howe flubbing his own testimony. As that's independent of anything Mr. Burrier did, it's entirely unclear that physical evidence of a scar would have made any difference as that particular inconsistency goes to the heart of the claim. And this court had determined in the previous merits appeal that that particular inconsistency was supported by substantial evidence. The court also addressed previously the concern about translation problems and said that any translation problems did not rise to the level of a due process violation. I'm not sure that that's an issue of law of the case, but certainly if the court wasn't concerned that the translation problems, which are really the same as those being alleged presently, didn't rise to the level of a due process violation, then Mr. Howe's not — I mean, Mr. Burrier's not attending to such translation errors would also not rise to the level of a due process violation and therefore wouldn't qualify for ineffective assistance of counsel. Prejudice is really dispositive of the ineffective assistance of counsel claim in this case. And because the finding that was upheld by this court that Mr. Howe's testimony was not credible depended only on issues to which Mr. Howe himself were responsible, it would be futile to reopen because there's no possibility of showing prejudice in this case. There's no indication that Mr. Burrier's performance somehow obscured the credibility issue or that if Mr. Burrier had presented different evidence or coached Mr. Howe prior to the hearing, that either his own inconsistent testimony would have been prevented or somehow rehabilitated. Under the petitioner's argument, any alien who has testified inconsistently about an asylum claim and was found not credible could attribute those inconsistencies to poor preparation and achieve reopening. I think that was a concern that was raised previously by this court about an open-ended equitable tolling rule. And certainly where an alien has been found to have offered incredible testimony, it doesn't make sense, particularly on the grounds of poor preparation, to reopen for ineffective assistance of counsel. Mr. Howe alleges that Mr. Burrier should have spent more time with him, and in the stay motion alleges that he wasn't advised that being precise about numbers and dates were important. That testimony isn't compelling because Mr. Howe was sworn to tell the truth before the court, and certainly he was aware that his asylum claim was an important matter to which he needed to give precise testimony. Therefore, the preparation argument wouldn't have changed the result. This appears to be an after-the-fact, last-ditch effort to spin Mr. Howe's incredible testimony to get a second bite at the apple, and that's not the purpose of a motion to reopen. The concern here is really whether or not Mr. Howe was prevented from reasonably presenting his case. So if the concern is a fair hearing, he certainly had multiple opportunities to challenge his adverse credibility determination and did so all the way up to this court, and that determination was upheld. Okay. If there are no further questions. I have a question. Sure. I was not able to find in the record we now have whether there was a notice given by the BIA that Mr. Howe had 90 days to file a motion to reopen. Was he given such notice? Is there anything in the record that shows that? I don't recall whether there was anything in the record or not. I would hope that he was given notice that he needed to do so within 90 days. He certainly did have that four-year span where he did have contact with counsel, and someone could have informed him of that requirement. The types of errors that Mr. Howe is alleging are things he really ought to have been aware of himself. He certainly would have known if he was having difficulty understanding the translator at the time of the hearing itself. Even though he's supposedly not a sophisticated gentleman and was unfamiliar with English, you would think that he would realize that he ought to have spent more time preparing the case with the attorney as well. And because he was present in the courtroom, the immigration judge at an earlier hearing had expressed concern about needing some type of documentation with regard to the SCAR. So he probably would have known, in addition, that that type of evidence was something that was desirable to present to the court, and he didn't do so. Any further questions? Okay. Thank you. I'm sure you're out of time. If you have something brief to say. I do, Your Honor. If I may borrow a phrase from another area of law, which is totality of the circumstances. Credibility is not a single issue. It is a web. And a inconsistency that seems to appear as innocent in one circumstance may appear pernicious in another. And the failure to offer any evidence to corroborate any of the story would have made what might have otherwise been an innocent inconsistency. Why didn't Mr. Howell or his attorneys come back with an affidavit or a doctor's note or something when they tried to reopen this four years late? I have no idea, Your Honor. There was another opportunity there to try and get this evidence before the BIA and try and persuade them, and we still didn't do that. So to this date, we're now eight years, nine years after the hearing before the IJ. Nobody's yet been to that doctor to try and get corroboration. That's correct, Your Honor. I do not know whether that type of evidence would have even been appropriate to present to the BIA. It might have been worth a try. Yeah. I don't know, Your Honor. Thank you, Mr. Prentz. Thank you very much. The matter just argued will be submitted and will next year argument in the United States v. Coleman.
judges: Alarcon, Rymer, Bybee